## Buckeye Union Ins. Co. v. Lawrence
*[Cite as 7 AOA 77]*

*Case No. 12-89-3*
*Putnam County, (3rd)*
*Decided October 25, 1990*

*Robert B. Hollister, Attorney at Law, 301 East Main Cross Street, Findlay, Ohio 45839-1086, for Appellant.*

*James L. Schuller, Donald S. Bennett, Attorneys at Law, 3450 West Central Avenue - Suite 242, Toledo, Ohio 43606, for Appellees.*

KEEFE, J.

The issue here is whether the trial court correctly determined a declaratory judgment action brought by Buckeye Union Insurance Company (Buckeye) by deciding that provisions of an insurance liability policy issued by Buckeye to one Basil Blake covered Kelly R. Lawrence. Kelly Lawrence was driving Blake's insured 1978 Pontiac on September 7, 1986 when an accident occurred.

On February 7, 1989, the common pleas court decided as follows:

"5. A declaratory judgment is therefore granted in favor of Defendants in the within case and against Buckeye Union Insurance Company. It is hereby adjudged and decreed that the insurance policy in question, No. 7ON 70 09541102, provides liability coverage and requires that a defense be provided to Kelly Lawrence for any claims, causes of actions, or judgments rendered against him as a result of the operation of Basil Blake's 1978 Pontiac LeMans on September 7, 1986. It is so ordered."

The particular language of the liability policy with which Buckeye covered Blake's vehicle is critical. The relevant language states that coverage will be afforded to "[a]ny person using your covered automobile." However, this broad scope of coverage contained in the policy is limited by provisions contained in the "Exclusions" portion. The "Exclusions" section states in pertinent part as follows:

"A. We do not provide Liability Coverage for any person:

"***

"8. Using a vehicle without a reasonable belief that person is entitled to do so."

The issue, therefore, is whether the court below correctly found sufficient evidence to show that Kelly Lawrence had a reasonable belief that he was entitled to operate the vehicle of Blake on the date of the accident and thus whether Kelly Lawrence qualifies for a defense by Buckeye and satisfaction of relevant judgments rendered against him.

The appellant advances two separate assignments of error. The remonstrations are akin, *viz*, that the court below erred in deciding that insurance coverage is afforded to Kelly Lawrence. We find the assignments meritorious.

The trial testimony anent the accident of September 7, 1986 makes for a regrettable tale of excessive beer drinking, traffic law violations including unlawful speeding, arguments, injuries, and poor memories. The trial court made the following findings of fact, inter alia:

"2. On that date September 7, 1986 Rodney Kelly and a group of boys went to the Basil Blake residence and asked Basil Blake if they could use his vehicle. Kelly Lawrence was not present at that time.

"***

"5. Defendant Kelly Lawrence later joined the group of boys.

"***

"7. *Kelly Lawrence, as well as other occupants of the vehicle, consumed significant quantities of alcohol and at some point prior to the accident became intoxicated.* A discussion occurred between Kelly Lawrence and Rodney Kelly as to which of those two individuals should be driving the vehicle. ***

"8. Kelly Lawrence then drove the vehicle. While driving the vehicle, Kelly Lawrence was involved in an accident causing injury to passenger Christopher Krogman, as well as others who may have sustained injuries." [Our underscoring.]

We are unable to agree with all the findings of fact made below, but we do credit and adopt the above because the evidence overwhelmingly supports them.

From the trial transcript we perceive other significant facts in the raucous scenario sub judice. Although some testimony tends to show that Rodney Kelly stated to Kelly Lawrence that Blake (owner of the Pontiac) had indicated

Lawrence was to drive the vehicle, at trial Blake denied ever giving such an order. Elizabeth Ann Gallant, age eighteen at the time of trial and sixteen on the date of the accident, was a passenger in the front seat of the vehicle at the time of the accident. She had not consumed any alcohol. In response to a question as to whether there was any alcohol in the car immediately prior to the accident, she testified that Kelly Lawrence had a "12 Pack beneath his legs" as he drove. Kelly Lawrence drove recklessly, speeding and swerving, according to Gallant. Gallant recounted that she looked at the speedometer while Kelly Lawrence was driving and "it was 95 miles a hour."

At the time of the accident, a total of seven boys and girls were in the Pontiac, three in front and four in the rear. Over resistance from Rodney Kelly, Kelly Lawrence assumed the driving in an aggressive fashion.

Much of the testimony by the boys and girls about what Rodney Kelly is supposed to have told Kelly Lawrence regarding the latter's authority to drive Basil's vehicle is vague. Rodney's trial testimony about what Blake did or did not instruct him vis a vis Kelly Lawrence disagrees with Rodney's own deposition of June 9, 1987, approximately one and a half years prior to trial.

When Basil Blake turned over the keys of his Pontiac to Rodney Kelly definitely no permission was given to Rodney to permit Cab Lawrence to drive. Kelly Lawrence's name may have been mentioned upon that occasion, but the reference contained no authorization for Kelly Lawrence to drive the Pontiac. It is impossible for us to conceive from the facts of the instant case that Blake would have allowed Kelly Lawrence, a youth whom the trial court found to have been seriously under the influence of alcohol and ultimately intoxicated at the time of the accident, to drive his car which was filled with teenagers, most of whom had likewise been drinking significantly. Moreover, the record is devoid of any objective or subjective factors which would prove that Kelly Lawrence had a "reasonable belief" that he was entitled to use the Blake vehicle on the night of the accident.

Proof overwhelmingly settles the fact that Kelly Lawrence forcibly removed Rodney Kelly from the driver's seat before the accident. There is a marked incongruity between Rodney Kelly's resistance to Kelly Lawrence's assuming the driver's seat and Lawrence's stand that he elected to drive only because Rodney Kelly had told him that Blake wanted him - Lawrence - to drive. It is unreasonable for Rodney Kelly to have resisted Lawrence Kelly, which he did, at about the same time as Rodney Kelly is alleged to have conveyed to Kelly Lawrence the message that Blake wanted the latter to drive. This inconsistency makes the Kelly Lawrence version incredible. Lawrence decided to drive no matter what. It is unrealistic to conclude that he had a "reasonable belief" that he was authorized to drive that car at that particular time. The subject most probably was no part of his mental processes at that time.

Most of the cases cited are inapposite for one reason or another. However, we find analogous *Carbone v. INA Insurance Co. of Ohio, et al.* (unreported) Nos. 42622 and 42772, Cuyahoga County Appeals, March 19, 1981, cited by appellant. The *Carbone* court, in a declaratory action, was petitioned to construe and apply insurance policy language similar to that contained in the Buckeye policy. The policy in *Carbone* also included a "reasonably believed" exclusion. The trial court held that Ronald Carbone was covered by the automobile liability policy. The court of appeals reversed and entered judgment for the insurance company. Ronald Carbone was not a licensed driver. It is just as unlikely that a driver who is intoxicated (Lawrence) and driving recklessly could realistically hold a reasonable belief that he was entitled to drive Blake's vehicle as it is that a driver without a license (Carbone) could develop such a reasonable belief. See *Security Mutual Casualty Co. v. Hoff* (1978), 54 Ohio St. 2d 426, 429 cited in *Carbone.*[1]

Both assignments of error are well taken and are sustained. Accordingly the judgment below is reversed and judgment entered for the plaintiff-appellant.

*Judgment reversed.*

BRYANT and EVANS, J.J., concur.

KEEFE, J., retired, of the First Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.

---

[1] The Supreme Court in *Security Mutual Casualty Co.* approves the determination of issues similar to that before us "in a realistic way." We consider that our resolution meets that standard, inter alia.